## Gilbert M. Brown v. Lucina B. Parsons.

*Lease: Emblements: "Away-going" crops: Presumption.* A lease of a farm to a tenant, granting to him "the privilege to keep and harvest all the crops (in case the land is sold), which he may have put in, and have either pay for what he may do in preparing to put in other crops, or the privilege of putting them in and harvesting the same," "for the term of one year, with the privilege of three years, if not sooner sold, from and after the first day of April, A. D. 1866," the lease containing an agreement on the part of the tenant to "hire the said premises for the term of one or more years, as above mentioned;" and further, that he would "not put in more than twenty acres of wheat in any one year," will confer upon the tenant the right to harvest a field of wheat, not more than twenty acres, after the expiration of the lease.

It is always a presumption that a lease for one year, with the privilege of several, is to be continued on the same terms, and with the same rights and privileges to the tenant as during the first year, unless some other intention is expressed.

*Heard October 20. Decided October 25.*

Error to Washtenaw Circuit.

This was an action of replevin brought by Lucina B. Parsons in the Circuit Court for the County of Washtenaw, against Gilbert M. Brown for a quantity of wheat in stacks, which had been sown by defendant upon premises leased by the plaintiff to the defendant, during the term, but harvested after its expiration. .

Upon the trial, the lease was offered in evidence, and is as follows:

"It is hereby agreed between Oliver S. Parsons and

Lucina B. Parsons, parties of the first part, and Gilbert M. Brown, party of the second part, as follows: The said parties of the first part, in consideration of the rents and covenants herein specified, do hereby let and lease to the said party of the second part, all the east half of the northwest quarter of section six, in the township four south, of range six east, eighty acres more or less, in the town of York, county of Washtenaw, and state of Michigan, for the sum of one hundred and fifty dollars per annum, payable as follows, viz: One-half on the first day of July, and the other half on the first day of January in each and every year. Said Brown to have the privilege to keep and harvest all the crops (in case the land is sold) which he may have put in, and have either pay for what work he may do in preparing to put in other crops, or the privilege of putting them in and harvesting the same, and the privilege to cut poles to use in repairing the fences, for the term of one year, with the privilege of three years if not sooner sold, from and after the first day of April, A. D. 1866, on the terms and conditions hereinafter mentioned, to be occupied for farming purposes: provided, that in case any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said parties of the first part, their certain attorney, heirs, representatives, and assigns, to re-enter into and repossess the said premises, and the said party of the second part, and each and every other occupant to remove and put out.

"And the said party of the second part does hereby hire the said premises for the term of one or more years, as above mentioned, and does covenant and promise to pay to the said parties of the first part, their representatives and assigns, the sum of one hundred and fifty dollars per annum, payable as stated above; that he will seed to

clover all ground harvested; that he will not put in more than twenty acres of wheat in any one year, nor take off any wood or timber except as above mentioned for repairing the fences on said farm.

"And also, that he will at his own expense, during the continuance of this lease, keep the said premises and every part thereof in as good repair, and at the expiration of the term, yield and deliver up the same, in like condition as when taken, reasonable use and wear thereof, and damages by the elements excepted.

"And the said parties of the first part do covenant that the said party of the second part, on paying the aforesaid installments, and performing all the covenants aforesaid, shall and may peaceably and quietly have, hold, and enjoy the said described premises for the term aforesaid.

"The covenants, conditions, and agreements, made and entered into by the several parties hereto, are declared binding on their respective heirs, representatives and assigns.

"Witness our hands and seals this 27th day of March, A. D. 1866."

It was admitted that the wheat replevied was sown by the defendant on the premises described in the lease, in the fall of 1868, before the expiration of his term, and that the defendant harvested the wheat the next summer after the expiration of his term, and had possession of the wheat at the time the same was seized under the writ in this case.

The Circuit Judge charged the jury as follows:

"By the express terms of the lease the right of the defendant to the use of the land or any portion of it, and of all crops upon it, ceased on the first day of April, 1869, and your verdict must be for the plaintiff, unless you shall find as a matter of fact from the evidence in the case, that an established local custom or usage prevailed, at the time

of the date of this lease in the section of the country where the land described in the lease is situated, including the town of York, by which a tenant under such a lease as this, where the rents are payable in money, and no provision is contained in the lease itself on the subject, has or had the right after the expiration of his term to come back, enter on the land, and cut and carry away the crop which he had sown the fall before." To which the defendant excepted; as also to the refusal of the Court to charge as requested by the defendant, as follows:

*First*—"A tenant whose term expires in the spring may put in a crop of wheat in the preceding fall and harvest the same, though it may not have matured at the expiration of the term mentioned in the lease, unless by the contract or local custom he shall be debarred of said right."

*Third*—"The jury have the right to find for the defendant under the evidence in this case."

*Fourth*—"The lease on its face implies the right on the part of the defendant to put in twenty acres of wheat in the fall of 1868."

*Sixth*—"The lease is one for a year, and not absolutely for three years, and could be terminated at the end of the first, or of the second year."

*Seventh*—"By the terms of the lease the tenant was clearly entitled to sow wheat in the fall of the first year and harvest it the next summer; and if the parties act upon the lease the second year, then the tenant could as clearly sow wheat in the fall of that year and harvest it the next summer; and if they act upon it the third year, then the tenant could as clearly sow a wheat crop in the fall of that year and harvest it the ensuing summer."

Under the charge, the jury found a verdict for the plaintiff, and assessed the damages at the sum of six cents;

and the judgment entered thereon, the defendant below brings into this Court by writ of error.

*S. E. Engle*, for plaintiff in error.

*Joslin & Blodget*, for defendant in error.

COOLEY, J.

A number of questions are raised by the record in this case, but all the others are rendered unimportant by the view we take of the one raised upon the construction of of the lease under which Brown claimed the wheat which was the subject matter of litigation.

The lease bore date March 27, 1866, and by it Mrs. Parsons leased to Brown a certain farm of eighty acres, for the annual rent of one hundred and fifty dollars, "said Brown to have the privilege to keep and harvest all the crops (in case the land is sold), which he may have put in, and have either pay for what work he may do in preparing to put in other crops, or the privilege of putting them in and harvesting the same," "for the term of one year, with the privilege of three years if not sooner sold, from and after the first day of April, 1866 ;" and Brown, on his part, did thereby "hire the said premises for the term of one or more years, as above mentioned," covenanting to pay the said rent, and that he would "not put in more than twenty acres of wheat in any one year."

Brown, it appears, elected to remain on the premises for three years, and it is not claimed, so far as we know, that he failed in any particular to observe and keep his covenants. In the fall of 1868 he sowed a part of the land, not exceeding twenty acres, to wheat, and in the summer of 1869 harvested and removed the same, the lease having

expired on the first day of the preceding April. Mrs. Parsons, claiming that he had no right to sow any crop upon the land which would not mature during the term, demanded this wheat as her own and replevied it; and the Circuit Court sustained her claim.

We have found ourselves unable to agree with the Circuit Court in the construction put upon this lease. The lease was not, as was claimed on the argument in this court, a three-year lease, subject to be terminated in one year at the will of the lessee; but it was a lease for one year with the privilege of three. The rent was to be uniform for the whole period, and there is nothing to indicate that the privileges of the lessee were to be less or other in the second or third year than in the first. But in the first year we think he had an undoubted right to put in a crop of wheat. Passing, for the present, all the other clauses of the lease, we do not perceive how on any other hypothesis we can give full effect to the clause which gives him, in the event of a sale, the benefit of the crops sown or prepared for.

The purpose of this clause plainly is, not to give the lessee new rights in the event of a sale, but to protect him in the rights and equities he already possessed; not to give him crops which he had sown without right, but to guaranty his right to harvest those he had sown in honest reliance upon the lease. But there is no room for doubt that had a sale been made the first year after a crop of wheat had been sown, this crop would have belonged to the lessee, according to the express terms of the lease.

In the first place, the lessee had the whole of the first year in which to elect whether to continue the tenancy longer or not, and until he elected not to continue it, it could not be known that the crop of wheat would not be harvested during the term. If, therefore, a sale had been

effected in March, before such election, Brown would have been clearly entitled to harvest the wheat the following summer, because it was his at the time of the sale, and he had not then elected to abandon it to his lessor, if a surrender of the premises could have that effect. Moreover, the lease, in providing for saving to him his crops, makes no discriminations and imposes no restrictions except as to the quantity that may be sown to wheat. Every crop sown and not yet matured is saved to the lessee, and the benefit of any labor expended in preparation for any crop.

And what is true of the first year, is equally true of the second and third, except that wheat sown in the third the lessor would know could not be harvested during the term, and therefore it might be claimed that he sowed at his peril. Nevertheless, the terms of the lease are sufficiently broad to entitle him to payment for this crop also, had a sale been effected before the three years expired. The inference is, therefore, very strong, if not conclusive, that the parties understood that such a crop if put in would rightfully belong to the lessee.

But we think the other clause, which limits the right of the lessee to putting in "twenty acres of wheat in any one year," when taken in connection with the one already referred to, is conclusive on this point. It is true, this clause is found among the covenants of the lessee, but that fact is not very important when the meaning of the parties is being sought for. We endeavor to gather the intention of the parties from "the four corners of the instrument;" and when we find the lessor requiring the lessee to covenant that he will not in any one year sow more than twenty acres to wheat, and also find him giving a stipulation, which, in a certain contingency, recognizes the right of the lessee to a crop of wheat sown in any year, the implication of assent on his part to the putting in of this crop in each

and every year is very strong unless something appears in some other part of the instrument to negative it. In this lease we find nothing elsewhere to negative this implication of assent, but, on the other hand, something to confirm it, as we have already shown.

The tenant's right to this crop may be more shortly proved in another way. The wheat crop sown the first year he undoubtedly had a right to harvest, notwithstanding he did not elect to extend the term; because in that event no effect could in any other way be given to the clause which restricted him to sowing twenty acres to this grain, and we are not to infer that that clause was employed without purpose. But when we have ascertained what were the tenant's rights the first year, we have also determined what they were the second and third; for it is always a presumption that a lease for one year with the privilege of several, is to be continued on the same terms, and with precisely the same rights and privileges to the tenant as during the first year, unless some other intention is expressed; and we have already said that a different intention is not discoverable in this lease.

The judgment should be reversed and a new trial ordered.

CAMPBELL, CH. J. and GRAVES, J. concurred.

CHRISTIANCY, J. did not sit in this case.

